**Dated: July 15, 2020**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 19-12290-JDL |
| Obed Saul Barragan Reyes, | ) | Ch. 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Al Lado Cambio De Cheques, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 19-01094-JDL |
| | ) | |
| Obed Saul Barragan Reyes, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN
PART MOTION FOR SUMMARY JUDGMENT**

This is an adversary brought by a check cashing business, Plaintiff, Al Lado Cambio De Cheques, Inc. ("Cheques") against the owner of a construction company, Defendant/Debtor Obed Saul Barragan Reyes ("Reyes") to determine the dischargeability of a debt. Cheques asserts that Reyes' company's issuance of thirteen (13) employee

paychecks cashed by Cheques and subsequently dishonored by Reyes' bank constitutes a debt non-dischargeable under 11 U.S.C. § 523(a).[1] The parties agree that there is no dispute as to any material fact; accordingly, the Defendant Reyes has moved for summary judgment.  Plaintiff Cheques, while agreeing that no genuine issue exists with regard to material facts, does dispute the legal conclusions argued by Reyes based on those undisputed facts and, further, argues that those facts when viewed in the light most favorable to Plaintiff establish that Reyes is not entitled to judgment as a matter of law. Before the court for consideration are the *Defendant's Motion for Summary Judgment* ("Motion") [Doc. 16] and the *Plaintiff's Response to Defendant's Motion for Summary Judgment* ("Response") [Doc. 18].  The following findings of fact and conclusions of law are made pursuant to Federal Rules of Bankruptcy Procedure 7052.[2]

## I. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), and 157(a) and the Order of Reference of the United States District Court for the Western District of Oklahoma as Local Rule LCvR 81.4(a).  This matter seeking a determination of an objection to the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which this Court has authority to enter a final order. Furthermore, Cheques and Reyes have consented to the jurisdiction of this Court and its

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code. 11 U.S.C. § 101 et seq.

[2] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

ability to enter a final order pursuant to Rules 7008 and 7012(b).  Venue is proper pursuant to 28 U.S.C. § 1409(a).

## II. Findings of Fact

The determination of whether a motion for summary judgment is to be granted is based upon whether there are any material issues of fact which are undisputed and entitles the moving party to judgment as a matter of law.  In the present case, the parties have made this Court's determination of most, but not all, material facts easy by agreeing to them.  In his Motion the "Defendant does not dispute the Background Facts contained in Plaintiff's Complaint" and agrees that "the testimony of both Defendant and Plaintiff's representative Jesus Flores during depositions supported such facts." [Doc. 16, pg.1]. Likewise, in its Response the "Plaintiff agrees with Defendant that no genuine issue exists with the material facts set forth in Defendant's statement of material facts." [Doc. 18, pg. 1].

The Court finds the following material facts to be undisputed:[3]

1. Reyes is the sole owner and manager of First Choice Restoration LLC, an Oklahoma limited liability company ("FCR").  Many of FCR's employees were Hispanic individuals, many of whom did not maintain a bank account.

2. One of the services that Cheques provides to the Hispanic community is cashing checks.  At all times pertinent herein, many of FCR's employees regularly cashed their payroll checks through Cheques, and Reyes knew that Cheques regularly cashed his

---

[3] All but paragraphs 5, 9, 11 and 12 are taken from the Undisputed Material Facts to which the parties agreed in the Motion and the Response.  Paragraphs 5, 9, 11 and 12 are "undisputed" by virtue of Defendant Reyes' specific admission of them in his Answer to the Amended Complaint.

employees' payroll checks.

3. It was important to FCR and Reyes that in order for FCR to pay and keep employees that Cheques continue to cash FCR's employees' paychecks. Between May, 2016 and November, 2017, Cheques cashed 259 payroll checks for employees of FCR in the aggregate amount of $387,817.00.

4. Prior to November, 2017, a few FCR payroll checks cashed by Cheques were returned for insufficient funds. Cheques would discontinue cashing FCR payroll checks upon receiving notice of insufficient funds check until after FCR had covered all outstanding returned checks.

5. Prior to November, 2017, when several FCR payroll checks had been returned to Cheques due to insufficient funds, Flores called Reyes and requested that he take care of the returned checks. Reyes went to Cheques' office and paid for the returned checks. At the same time, Flores told Reyes that Cheques would no longer be able to cash FCR payroll checks. Reyes pleaded with Flores to continue cashing FCR's employees' payroll checks and told Flores that he would personally make sure that every check was covered. Cheques relied on Reyes's representations and promises and continued cashing the payroll checks. [Amended Complaint, Doc. 4, ¶ 44; Answer to Amended Complaint, Doc. 9, ¶ 44].

6. Reyes represented to Cheques that the payroll checks had been returned for insufficient funds only because of the timing difference in the release of funds deposited to cover the payroll checks. Reyes represented to Flores that if there ever was a problem with a payroll check that he, Reyes, would personally come to Flores' office and "take care of it," and that he would not let Cheques suffer any loss if it would continue to cash the

4

payroll checks. Flores testified by deposition that Reyes told him, "Please go ahead and cash my checks. I will not do you bad. I will take care of you. I will pay the checks no matter what."

7. During November, 2017, Cheques cashed 13 payroll checks issued by FCR to its employees.

8. A couple of the November, 2017 payroll checks were larger than normal. Prior to cashing the larger payroll checks, Flores called Reyes to make sure that there were sufficient funds with which to pay the checks. Reyes assured Flores that all was well, that the payroll checks were "good" and requested that Cheques cash the checks for "my guys." Reyes told Flores that he had always covered, and always would cover, the payroll checks cashed by Cheques.

9. Reyes knew that there were not sufficient funds to cover the November, 2017 payroll checks, but in November, 2017 represented to Cheques, through Flores, that all was well with the business and that the payroll checks would clear, not to worry. [Amended Complaint, Doc. 4, ¶ 34; Answer to Amended Complaint, Doc. 9, ¶ 34].

10. Reyes did not tell Flores that his business was in financial distress or that in December, 2017 FCR had ceased business operations.

11. Reyes knew that Cheques would cash the payroll checks because Reyes had reassured Flores on more than one occasion, including in November, 2017, that business was good, that the checks would clear, and that he, Reyes, would personally make sure all payroll checks cashed by Cheques were covered. [Amended Complaint, Doc. 4, ¶ 50; Answer to Amended Complaint, Doc. 9, ¶ 50].

12. Cheques relied on Reyes' representations, and Reyes knew that Cheques was

5

relying on his representations to cash the November, 2017 payroll checks. [Amended Complaint, Doc. 4, ¶ 35; Answer to Amended Complaint, Doc. 9, ¶ 35].

13. In December, 2017, FCR's bank had returned all 13 payroll checks for insufficient funds. Flores contacted Reyes several times about the returned checks, and each time Reyes told him that he would take care of the checks. Neither FCR nor Reyes ever paid Cheques for the thirteen (13) dishonored checks.

14. In April, 2018, Cheques filed suit against FCR and Reyes in the District Court of Oklahoma County seeking damages "in the sum of $46,880 for the thirteen (13) returned checks plus 1% per day loss profits on such sum" plus attorneys fees and costs. On August 9, 2018, the District Court entered judgment in favor of Cheques and against FCR and Reyes for damages in the amount of $66,569, $2,500 in attorneys fees and $387.14 in costs, for total of $69,456.14.[4]

### III. Summary Judgment Standards in General

It is appropriate to grant a motion for summary judgment when the pleadings and other materials in the record, together with supporting affidavits, if any, demonstrate that there is no genuine dispute with respect to any material fact and that the moving party is entitled to judgment as a matter of law. See Rule 56(c), made applicable to this adversary

---

[4] *Al Lado Cambio De Cheques, Inc., Plaintiff v. First Choice Restoration, LLC and Saul Barragan, Defendants,* Case No. CJ-2018-1945. As stated above, the Petition in the State Court case alleged that 13 checks in the aggregate amount of $46,880 were returned due to insufficient funds. In this adversary proceeding no amount of the checks is stated. What is stated is that there is an obligation due under the state court Judgment in the amount of $69,456.14. There is nothing in either the record in this adversary or in the state court proceedings indicating the basis upon which approximately $20,000 over the face amount of the checks was added to the Judgment. Also, this Court is unaware of any possible basis for Cheques to have sought **1% per day** (365% per annum) interest as alleged in its Petition.

proceeding by Rule 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact". *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Courts must review the evidentiary material submitted in support of the motion for summary judgment to ensure that the motion is supported by evidence. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden, then summary judgment must be denied. Hearsay evidence cannot be considered on a motion for summary judgment. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994). When considering a motion for summary judgment, the court views the record in the light most favorable to the party opposing summary judgment. See *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991) (the court "must view the record in a light most favorable to the parties opposing the motion for summary judgment"); *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).

Denial of summary judgment requires existence of genuine material issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986). No genuine issue of fact exists if a rational fact finder, when viewing the record as a whole, could not find for the party opposing the summary judgment. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). "[T]he non-moving party may not rest on its

7

pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

### IV. Summary Judgment Where Showing Fraudulent Intent Required

Because of the "fresh start" policy underlying the Bankruptcy Code and the harshness of the penalty of a denial of a debtor's discharge, the Court construes the discharge provisions under the Bankruptcy Code liberally in favor of the debtor and strictly against the party objecting to discharge. A debtor's discharge is rarely denied by summary judgment. Most grounds for denial of a discharge require a finding that a debtor intended to mislead, conceal, or deceive. "As a general rule, questions involving a person's intent or other state of mind cannot be resolved by summary judgment." *In re Herrman,* 355 B.R. 287, 291 (Bankr. D. Kan. 2006); *Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980), *cert. denied* 451 U.S. 984, 101 S.Ct. 2316 (1981); *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Questions of intent involve many intangible factors, such as witness credibility, that are best left to the consideration of a fact finder after a full trial."). But in an exceptional case, a person's "denial of knowledge may be so utterly implausible in light of concealed or irrefutable evidence that no rational person could believe it," making a trial on the question of the person's state of mind unnecessary. *Herrman,* 355 B.R. at 291. Thus, while the issue of intent involving a person's state of mind is generally a question of fact that may preclude summary judgment, there is no *per se* rule that summary judgment is improper where intent is an issue. Likewise, it is not *per se* inappropriate to grant summary judgment when intent is an element of proof for non-

dischargeability.

## V. Discussion

### A. Exceptions to Discharge – General Considerations

The "central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654 (1991). In order to effectuate this "fresh start" policy of bankruptcy relief, exceptions to discharge are narrowly construed with all doubts resolved in the Defendant's favor. *Bellco First Federal Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997); *Kukuk v. Chevy Chase Bank, FSB (In re Kukuk)*, 225 B.R. 778, 782 (10th Cir. BAP 1998); *Miller v. Gentry (In re Miller)*, 55 F.3d 1487, 1489 (10th Cir. 1995), *cert. denied*, 516 U.S. 916, 116 S.Ct. 305 (1995). It is a well-established rule that exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor. *Kawaauhua v. Geiger (In re Geiger)*, 523 U.S. 57, 62, 118 S.Ct. 974 (1998). The burden of proof for establishing an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654 (1991).

### B. Plaintiff's Claims

Cheques seeks to have Reyes' debt to it determined non-dischargeable on three grounds: (1) Count I alleging that the debt due it was incurred and resulted from willful and malicious injury by Reyes under § 523(a)(6); (2) Count II alleging that the debt was for money or property obtained by false pretenses, a false representation or actual fraud

(other than a false financial statement) under § 523(a)(2)(A); and (3) Count III alleging the debt was incurred by use of a statement in writing that is materially false, respecting the debtor's or an insider's financial condition, on which the creditor reasonably relied and that the debtor caused to be made or published with intent to deceive under § 523(a)(2)(B).

### C. False Pretenses, False Representation or Actual Fraud under § 523(a)(2)(A) As It Pertains to Insufficient Funds Checks

To prevail under § 523(a)(2)(A) a plaintiff must establish the following elements: (1) the debtor made a false representation; (2) the debtor made the representation with the intent to deceive the creditor; (3) the creditor relied upon the representation; (4) the creditor's reliance was justifiable and (5) the debtor's representation caused the creditor to sustain a loss. See *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996) (elements of § 523(a)(2)(A)); see also *Field v. Mans,* 516 U.S. 59, 74–75, 116 S.Ct. 437 (1995) (creditor's reliance must be justifiable, but not necessarily reasonable).

A worthless check can form the basis of a non-dischargeable debt under § 523(a)(2)(A). See e.g. *American Furniture v. Bell (In re Bell)*, 2006 WL 3082110, *2 n. 11 (Bankr. D. Kan. 2006) (collecting cases). However, it is well established that the issuance of a "bad check" is insufficient, on its own, to establish that the debt is non-dischargeable. *KC Coring & Cutting Construction, Inc. v. McArthur (In re McArthur),* 391 B.R. 453, 457 (Bankr. D. Kan. 2008) ("An insufficient funds check, standing alone, is not a false statement [for purposes of § 523(a)(2)]."); *In re Strecker,* 251 B.R. 878, 882 (Bankr. D. Colo. 2000) (stating that "the mere issuance of a 'bad check', standing alone, is not grounds for a determination that such debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(2).") (Citing *In re Davis*, 246 B.R. 646, 652 (10th Cir. BAP 2000), *aff'd in part,*

*vacated in part on other grounds,* 35 Fed.Appx. 826 (10th Cir. 2002)).

To prevail on a non-dischargeability claim under § 523(a)(2)(A), premised on an insufficient funds check as a debt for money obtained by a debtor's "false pretenses, false representation, or actual fraud," a plaintiff must demonstrate that the debtor did not intend to pay the creditor at the time that the check was issued and knew at the time the check was presented that there would be insufficient funds in the debtor's account to cover the check upon presentation in accordance with the parties agreement. *Jarboe Sales Co. v. Degraffenreid (In re Degraffenreid),* 131 B.R. 178, 180 (Bankr. N.D. Okla. 1991) (a determination that a such a debt is non-dischargeable can only be established if the debtor did not intend to pay the creditor when the check was issued and knew the check would bounce); *Jack Master, Inc. v. Collins (In re Collins),* 28 B.R. 244, 247 (Bankr. W.D. Okla. 1983); *Designed Flooring Distributors, Inc. v. Wagenti (In re Wagenti),* 110 B.R. 602, 604 (Bankr. S.D. Fla. 1990) (finding that a debtor that knowingly issues a worthless check and orally represents that the check will be honored has made a false representation within the meaning of § 523(a)(2)(A)). In short, a check which does not clear the bank is insufficient to establish non-dischargeability under § 523(a)(2)(A) absent other circumstantial evidence of intent.

In the present case, the undisputed facts demonstrate considerable evidence, certainly enough to withstand summary judgment, of intent far beyond the mere presentation of the insufficient fund checks themselves. Reyes agrees that the undisputed facts include: (1) he told Flores that if there was ever a problem with a payroll check, he would personally come to Cheques' office and take care of it, and that he would not let

Cheques suffer any loss if it would continue cashing the payroll checks; (2) he told Flores that he had always covered, and always would cover the payroll checks cashed by Cheques; (3) he knew there were not sufficient funds to cover the November, 2017 payroll checks but he represented to Flores that all was well with the business and that the checks would clear; (4) he knew that the payroll checks would be returned for insufficient funds and that Cheques would suffer the loss of thousands of dollars; (5) he knew that Cheques was relying upon his representations to cash the November, 2017 payroll checks; and (6) at the time he was assuring Flores that the checks would be covered his business was in financial straits and would cease operations less than one month later, in December, 2017.

While Reyes may have successfully "played the float" when issuing checks prior to November, 2017, that strategy was obviously not going to work when his business began to deteriorate. This is not your typical insufficient funds check factual situation in which worthless checks standing alone are not conclusive evidence of intent to defraud under § 523(a)(2)(A). Here, there is undisputed evidence, taken in the light most favorable to Cheques as the non-moving party in a motion for summary judgment, that Reyes repeatedly represented to Cheques that the checks would be made good, and Cheques relied upon such representations in cashing them.

Reyes has by his Amended Answer and in his Motion stipulated as to his representations and inducement for Cheques to cash the checks. Given the facts, one would think that it was Cheques, not Reyes, that would be filing a motion for summary judgment. Reyes, however, in moving for summary judgment on the § 523(a)(2)(A) claim primarily relies on the argument that (1) given the circumstances, including the fact that FCR had a history of bouncing its payroll checks, Cheques cannot establish that it

12

"reasonably" relied upon Reyes's representations and (2) that Reyes' promises to make good on the checks was simply a promise to pay a debt which cannot form the basis of fraud.

### D.  Justifiable Reliance

Reyes contends that Cheques (Flores) was aware that FCR had a history of bounced checks, and that  Flores had testified in deposition that in September or October he got suspicious that there was no money in the bank to cover the  payroll checks.  Reyes sums up his position by stating in his Motion that since Cheques "knew that (Reyes) had previously written checks that bounced ... [it] knew that the checks at issue in this case would likely not clear ... (and) cannot claim that it justifiably relied on Reyes' statement that the checks would clear."

The Supreme Court has held in the context of a case involving dischargeability that causation must be proven under § 523(a)(2)(A) by a showing of actual and justifiable reliance on the part of the objecting creditor. *Field v. Mans*, 516 U.S. 59, 74-75, 116 S.Ct. 437 (1995).  There is no question that there was actual reliance in the present case–one of the undisputed facts is that Cheques relied upon Reyes representations in cashing the checks.  Assuming actual reliance is proven, the creditor must also show that such reliance was justifiable.   Justifiable reliance is an intermediate, subjective standard positioned between the higher standard of "reasonable" reliance and "mere" reliance. *Field*, 516 U.S. at 72-73; *In re Griffith*, 568 B.R. 444, 456 (Bankr. D. Utah 2017).   Justifiable reliance means that "[a] person is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his

opportunity to make a cursory examination or investigation." *Field,* 516 U.S. at 71; *Griffith*,

568 B.R. at 456.  In *Eugene Parks Law Corporation Defined Benefit Pension Plan v. Kirsh*,

*(In Re Kirsh)*  973 F.2d 1454, 1458 (9th Cir. 1992), the Ninth Circuit explained justifiable

reliance as this:

> "The standard is not that of the average reasonable person.  It
> is a more subjective standard which takes into account the
> knowledge and relationship of the parties themselves.  Thus, 'a
> person of normal intelligence, experience and education ... may
> not put faith in representations which any such normal person
> would recognize at once as preposterous ....'  At the same time,
> the standard does protect the ignorant, the gullible, and the
> dimwitted, for 'no rogue should enjoy his ill-gotten plunder for the
> simple reason that his victim is by chance a fool.'"

(Quoting *Prosser and Keeton on the Law of Torts*, § 108 at 749-51 (5th ed. 1984).  For

purposes of § 523(a)(2)(A) actions, a creditor's reliance is unjustified "only where, under

the circumstances, the fact should be apparent to one of his knowledge and intelligence

from a cursory glance, or he has discovered something which should serve as a warning

that he is being deceived, that he is required to make an investigation of his own."  *Fields*,

516 U.S. at 71.

Courts have found the idea of imposing a duty to verify on creditors to be distasteful.

See *La Trattoria, Inc. v. Lansford, (In re Lansford),* 822 F.2d 902, 904 (9th Cir. 1987)

("Having intentionally misled the sellers in an area he knew was important to them, it is

unseemly for the debtor to now argue that he should be excused from § 523 because the

sellers actually believed him."); *In re Hough,* 111 B.R. 445, 450 (Bankr. S.D. N.Y. 1990)

(The court finding it "inappropriate for the debtors to argue that their debt to the plaintiff

should be dischargeable because the plaintiff believed them ....").

The intentional nature of the debtor's conduct was also the focus of the court's comments in *In re Richards*, 71 B.R. 1017, 1021 (Bankr. D. Minn. 1987):

> "It is not a defense to an action for battery that the victim negligently failed to see it coming, or that he did not use all reasonable means to avoid the blows.  It is no less absurd for one who defrauds another to defend against the consequences of the act by arguing, in effect, `Yes, I lied, and deceived the plaintiff for my gain and his loss, but it was his own fault for trusting me.  He should have been more careful, and I should not be held accountable.'"

Court's have frequently looked to whether the debtor and the creditor had an on-going relationship, either personal or business, in assessing whether the creditor's reliance on the debtor's representations or financial statements was reasonable.   See eg. *Leadership Bank, N.A. v. Watson, (In re Watson)*, 958 F.2d 977, 979-80 (10th Cir. 1992).  In the preceding year or two, Cheques had cashed almost $400,000 worth of FCR's payroll checks.  When there had been any returned checks, Flores called Reyes who had funds deposited to cover the returned checks.  In retrospect, Cheques and Flores made an unwise decision in relying upon Reyes pleas and promises, but the Court cannot say as a matter of law, again having to take the evidence in the light most favorable to the non-moving party, that Cheques' reliance upon those promises in cashing the checks was not justifiable.

### E. Whether Reyes' Pleas and Promises to Guarantee Payment of the Checks Are Actionable under § 523(a)(2)(A)

It is well understood that a promise to pay a debt, absent other circumstances, is not fraud or misrepresentation.   Reyes warns that if this Court were to find fraud or misrepresentation, "such ruling would be tantamount to ruling that any debtor who

15

promises to make good on a debt and later fails to do so is liable for fraud." However, the undisputed facts before the Court are not simply a promise to pay a debt. Reyes has by his Amended Answer and in the undisputed facts in his Motion conceded that "*prior to cashing the larger payroll checks, Flores called Reyes to make sure that there was sufficient funds with which to pay the checks, and Reyes assured Flores that all was well and that the payroll checks were good.*" This occurred when, again under the undisputed facts, "Reyes knew that there were not sufficient funds to cover the November 9, 2017, payroll checks." Cheques was induced to cash the checks based upon Reyes*'s* promises and representations. This Court is not finding that there could be any fraud or misrepresentation for Reyes' promises to make good on the checks *afte*r Cheques had cashed the thirteen (13) checks and Flores was attempting to affect collection.

Reyes relies upon *In re Collins*, 28 B.R. 244 (Bankr. W.D. Okla. 1983) for the proposition that there is no non-dischargeable misrepresentation when the maker of a dishonored check fails to make good on those checks "at a later date." In *Collins*, the court found in favor of the debtor where checks were dishonored due to insufficient funds, but the court so found because "no specific acts of representation that the checks were good have been proven." The court further stated that it was incumbent upon the creditor to "prove the debtor represented the check was good for payment since an NSF check alone is not conclusive evidence of an intent to defraud within § 523(a)(2)(A)." *Id.* at 247. In the present case, it is undisputed that there clearly were such representations.

### F. Whether Creditor Cheques Has Stated a Claim Under § 523(a)(2)(B)

Count III of Cheques' Amended Complaint asserts a claim under the provisions of

16

§ 523(a)(2)(B) which excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by----

**** 

> (B) use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive."

"Since [§ 523(a)(2)(B)] covers only statements 'respecting a debtor's ... financial condition' and subsection (A) excludes such statements, the subdivisions 'are ... expressly mutually exclusive.'" *First National Bank of Olathe, Kansas v. Pontow,* 111 F.3d 604, 608 (8th Cir. 1997). Unwritten misrepresentations of financial condition do not provide a basis for nondischargeability under § 523(a)(2)(A). *Red Oak Livestock Market v. Suhr (In re Suhr),* 2004 WL 5851369, *5 (Bankr. S.D. Iowa 2004) (citing *Alden State Bank v. Anderson (In re Anderson)*, 29 B.R. 184, 189 (Bankr. N.D. Iowa 1983) ("False statements concerning the debtor's or an insider's financial condition will be analyzed under 11 U.S.C. § 523(a)(2)(B); representations which do not deal with the debtor's or an insider's financial condition will be analyzed under 11 U.S.C. § 523(a)(2)(A)")).

Under the first requirement of § 523(a)(2)(B), a writing is materially false if it "paints a substantially inaccurate picture of a debtor's financial condition by misrepresenting

17

information of the type which normally would affect the decision to grant credit." *Midwest Community Federal Credit Union v. Sharp (In re Sharp)*, 357 B.R. 760, 765 (Bankr. N.D. Ohio 2007).  As this Court has noted above, cases within the Tenth Circuit have decided that a check standing alone does not make any representations, and therefore cannot make misrepresentations.  Also see *Williams v. United States*, 458 U.S. 279,  284, 102 S.Ct. 3088 (1982) ("[A] check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.'").  Checks are not statements supplying information about the maker's financial condition, but negotiable instruments, a form of contract, which evidence debt. They are a form of contract that creates rights. *In re Paulk*, 25 B.R. 913, 917-18 (Bankr. M.D. Ga. 1982) (a check is not a factual statement at all within the meaning of 11 U.S.C. § 523(a)(2)(B)).

It is clear that any false representations rest not with the checks themselves but with the oral representations which Reyes made in vouching that the checks were good and that he would cover the checks to induce Cheques to cash them.  FCR's payroll checks themselves are not materially false writings, and Cheques has not alleged any other writings that satisfy § 523(a)(2)(B) requirements.  Additionally, the oral representations (or misrepresentations) which Reyes is alleged to have made do not meet the requirement of a representation *in writing* under § 523(a)(2)(B).  Therefore,  the Court finds that the checks at issue are not 'statements in writing' for purposes of § 523(a)(2)(B) and Reyes' Motion with respect to claims asserted under § 523(a)(2)(B) is therefore granted.[5]

---

[5] In his Motion, Reyes places primary reliance on the case of *In re Joelson*, 427 F.3d 700 (10th Cir. 2005) for the proposition that § 523(a)(2)(B) should be given a "strict interpretation" so as to include only balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or an insider's net worth. *Joelson* was specifically abrogated by the Supreme Court decision in *Lamar, Archer & Cofrin, LLP v. Appling,* _U.S__, 138 S.Ct. 1752 (2018).

### G. Whether the Undisputed Facts Establish that Cheques Has Stated a Claim for Non-Dischargeability Under § 523(a)(6)

Count I of Cheques' Amended Complaint seeks to have Reyes' debt determined non-dischargeable under § 523(a)(6) which excepts any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The creditor objecting to discharge of a debt under § 523(a)(6) must prove by a preponderance of the evidence both "willfulness" and "maliciousness." *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley),* 235 B.R. 651, 655 (10th Cir. BAP 1999); *Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1129 (10th Cir. 2004). For purposes of § 523(a)(6), "willful" means intent to cause injury, not simply intentional conduct that results in injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 977 (1998) ("The word 'willful' in (a)(6) modifies the word 'injury', indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.") (emphasis in original). To be willful, a debtor must have intended both the act and the resulting harm.

For a debtor's actions to be malicious, they must be intentional, wrongful, and done without justification or excuse. *In re Deerman*, 482 B.R. 344, 369 (Bankr. D. N.M. 2012) (citing *Bombardier Capital, Inc. v. Tinkler*, 311B.R. 869, 880 (Bankr. D. Colo. 2004)). The Tenth Circuit follows a subjective standard in determining whether a defendant desired to cause injury or believed the injury was substantially certain to occur. *Via Christie Regional Medical Center v. Englehart (In re Englehart)*, 2000 WL 1275614, *3 (10th Cir. 2000) ("[T]he 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur."). Knowing or intentional conduct is not enough to trigger §

19

523(a)(6) liability; a plaintiff must also show that the defendant intended to do harm. See e.g. *In re Osborne*, 520 B.R. 861, 873 (Bankr. D. N.M. 2014).

Reyes has moved for summary judgment on the § 523(a)(6) claim on the basis that Cheques has not alleged, and cannot prove, that it has sustained "any actual injury" to its personal property. Reyes relies entirely upon the Tenth Circuit case of *Panalis v. Moore (In re Moore),* 357 F.3d 1125 (10th Cir. 2004). In its Response to the Motion, Cheques does not address *Moore.* An examination of the case is necessary.

In *Moore*, an oil and gas operating company owned by Moore hired Panalis, an independent oilfield contractor, to work on wells in Oklahoma. Before Panalis began work, Moore represented to Panalis that he had liability insurance that would cover Panalis if hurt on the job. In fact, Moore didn't have any such insurance. An explosion on the well severely injured Panalis and killed one of his helpers. Later, absolving Moore of any responsibility for what happened in the field, Panalis stated, "I never said Larry [Moore] had anything to do with the explosion." *Id.* at 1126. Panalis brought suit in state court alleging fraud based upon Moore's statements about his insurance coverage. The jury returned a verdict in the amount of $6.7 million with a specific finding that Panalis had *suffered damages as a result of the false representation*. (Emphasis the court in *Moore*).

When Moore filed bankruptcy, Panalis objected to the dischargeability of the state court judgment on the basis of fraud under § 523(a)(2)(A) and for willful and malicious injury to person or property under § 523(a)(6). The Bankruptcy Court granted summary judgment in favor of Moore on both counts. First, adopting the so-called "broad construction" of a "statement respecting the debtor's or an insider's financial condition", it held that Moore's

20

oral statement regarding insurance coverage was a statement regarding his "financial condition" which had to be in writing to be excepted from discharge under § 523(a)(2)(A). Second, the court held that under § 523(a)(6), the debtor must have intended to cause the injury, not just have intended to commit the act that ultimately caused the injury, and there was no evidence that Moore intended for Panalis to sustain injuries in the explosion.

On appeal, the District Court reversed the Bankruptcy Court, finding that the intentional deliberate act required by § 523(a)(6) was "Moore's fraudulent statement". Because the state jury found "Moore acted with the intent to deceive [and] Moore made the false representation 'with the intent' that it be relied upon," the District Court concluded that Panalis' reliance "caused" the damage to him. Furthermore, because fraud is an intentional tort, the "state court judgment establishes that Moore's statement was made with the intent to injure."

The Tenth Circuit reversed the District Court and affirmed the Bankruptcy Court. The Circuit stated:

> Here, the jury was seemingly motivated to award damages because it determined one of the consequences of Mr. Moore's intentional fraud was an injury sustained by Mr. and Mrs. Panalis. However, that injury had to have been the loss they suffered because Mr. Moore had no insurance available to compensate them. Yet, the jury did not specifically find that loss included the physical injuries suffered by Mr. Panalis or that Mr. Moore intended those injuries. Nothing in the record before us justifies such a conclusion. Although the verdict manifests a finding Mr. Moore "made the [false] representation with the intent that [Mr. Panalis] act or decide not to act, in reliance upon the representation," that is not a finding that the false representation was made with the intent that Mr. Panalis mishandle an oil storage tank causing the explosion that injured him."

****

In the context of this case, the Code makes inescapable the

> principal that unless a debt is the result of a willful and
> malicious act intended to do injury to a person, the debt is
> discharged. Having failed to prove, either in the Colorado court
> or the bankruptcy court, that Mr. Moore willfully and
> maliciously intended to cause his physical injury, Mr. Panalis
> was not entitled to an exception from discharge."

357 F.3d at 1128-31.

Reyes argues that *Moore* stands for the proposition that in a § 523(a)(6) claim the creditor cannot allege that it only suffered a financial loss but must assert an "actual physical injury to person or property." Such an interpretation is not supportable. First, there are many valid § 523(a)(6) actions that do not involve physical injury. See e.g. *In re Cantrell*, 208 B.R. 498 (10th Cir. BAP 1997) (conversion of sale proceeds); *In re Pineau*, 149 B.R. 239 (D. ME. 1993) (violation of copyright); *In re Brier*, 274 B.R. 37 (Bankr. D. Mass. 2002) (unauthorized use of trade secrets); *In re Abbo*, 168 F.3d 930 (6th Cir. 1999) (abuse of law process); *Matter of Hallahan*, 936 F.2d 1496 (7th Cir.1991) (breach of covenant not to compete); *In re Jercich*, 238 F.3d 1202 (9th Cir. 2001) (tortious breach of contract); *In re Gallagher*, 388 B.R. 694 (W.D. N.C. 2008) (alienation of affections). Section 523(a)(6) debts "are not confined to physical damage or destruction; *an injury to intangible personal or property rights is sufficient*." 4 *Collier on Bankruptcy*, ¶ 523.12 [4] (Alan and. Resnick & Henry J. Sommer Eds., 15th Ed. Rev.).

In the Tenth Circuit, the doors are open to declaring certain intentional breach debts non-dischargeable under § 523(a) (6). See e.g. *Sanders v. Vaughn (In re Sanders)*, 210 F.3d 390, *2 (10th Cir. 2000) (unpublished) ("[N]othing in *Geiger* indicates the Supreme Court's intention to immunize debtors under § 523(a)(6) for 'willful and malicious' breaches of contract."); *In re Militare,* 2011 WL 4625024, *3 (Bankr. D. Colo. 2011) ("A knowing

breach of contract is not necessarily excluded from 'willful and malicious' injury."); *In re Rylant,* 594 B.R. 783, 789 (Bankr. D. N.M. 2018) ("The Court holds that there is nothing in the language of the Bankruptcy Code, including § 523(a), preventing a breach of contract judgment from being declared nondischargeable under § 523(a)(6), so long as the requirements of that subsection are met.").

Second, what was really at issue in *Moore* was the absence of *causation* between the act and the injury. It is clear that Moore may have intended to defraud Panalis when he lied about insurance coverage, but he didn't intend that Panalis be injured in an explosion. In the present case, there is no issue as to causation between the act and the result. Reyes, by inducing Cheques to cash the payroll checks upon false representations that there was money in the bank to cover them and/or that he would make sure that the checks were good, brought about the very injury, though only financial it may be, that he intended or knew was substantially certain to occur. The Court does not find that *Moore* is controlling in the present case. Accordingly, Reyes' Motion as to the § 523(a)(6) claim is denied.

**IT IS THEREFORE ORDERED** that Defendant Reyes' Motion for Summary Judgment is **Granted** as to Count III of the Plaintiff's Amended Complaint asserting nondischargeable claims under § 523(a)(2)(B).

**IT IS FURTHER ORDERED** that Defendant Reyes' Motion for Summary Judgment is **Denied** as to Counts I and II of the Plaintiff's Amended Complaint asserting nondischargable claims under §§ 523(a)(6) and 523(a)(2)(A).

**IT IS FINALLY ORDERED** the Court will conduct a status conference in this matter

with respect to the two remaining Counts on the 19th Day of August, 2020, at 10:00 A.M. in the 2nd Floor Courtroom, 215 Dean A. McGee, Oklahoma City, OK, 73102. [6]

# # #

---

[6] Pursuant to the Court's Third Amended General Order 20-6, entered May 29, 2020, in response to the Covid-19 pandemic, the Court will provide further notice to the parties if this status conference is changed to a telephonic hearing or video conference.